UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

TONY SMITH                                                              PLAINTIFF

VS.                                         CAUSE NO. 3:13-CV-202-MPM-SAA

K.C. HAMP in his official capacity
and in his individual capacity; JOHN DOE
SHERIFF'S DEPUTIES in their individual capacities;
TUNICA COUNTY, MISSISSIPPI, a body politic                   DEFENDANTS

<u>MEMORANDUM OF AUTHORITIES</u>

**COME NOW**, Defendants, K.C. Hamp in his official capacity and in his individual capacity; Tunica County, Mississippi, a body politic, [hereinafter Tunica Defendants] individually and officially, by and through counsel, and respectfully tender this their Memorandum of Authorities in support of summary judgment in accordance with *Uniform Local Rule* 7.2 and *Fed. R. Civ. Proc.* 56, to wit:

I.      **PREMISE**

The undisputed material facts in this case clearly establish there is no cognizable constitutional violation stated. Sheriff K. C. Hamp, the sole individual Defendant, monitored the instant pursuit and can be heard throughout the radio traffic actively monitoring the actions of his deputies in a manner clearly consistent with a finding of qualified immunity. Ultimately, the fact that felony charges remain pending in the Circuit Court of Tunica County, Mississippi, for felony flight would deprive the Court of jurisdiction in any event.

II.     **BACKGROUND**

On Saturday, November 10, 2012, at approximately 10:16 p.m., Tunica County deputies

1

received a report of a high speed pursuit entering into Tunica County from Desoto County.[1]  It was advised over the radio and documented on the radio log that the fleeing vehicle was involved in a robbery, which is a felony.[2]  Pursuant to the Tunica County vehicular pursuit policy, vehicular pursuits are authorized for serious offenses when necessary to immediately apprehend fleeing suspects for offenses that would normally require full custody arrest (felonies).[3]  It is also agreed that multiple officers were attempting to apprehend Tony Smith as he fled at rates of speed between 80 and 100 miles per hour in Tunica County.[4]  All officers involved in this pursuit were trained in pursuit driving and were in authorized emergency vehicles.[5]  Sheriff K. C. Hamp, the sole individual Defendant, monitored the instant pursuit and can be heard throughout the radio traffic actively monitoring the actions of his deputies in a manner clearly consistent with a finding of qualified immunity.

Dash cam videos from several cruisers involved in the pursuit make it clear that Tony Smith exhibited his intention to avoid apprehension by refusing to stop when properly directed to do so.[6] The Supplemental Report of Captain Victor Randle is telling of the extent to which Tony Smith went

---

[1]Exhibit A - Tunica County Sheriff's Department Radio Log, 11/10/12.

[2]Exhibit A - Tunica County Sheriff's Department Radio Log, 11/10/12, at 22:23.

[3]Exhibit B - Tunica County Sheriff's Office Policy and Procedures, 4.17 Vehicular Pursuit Policy at page 1.

[4]Exhibit C - Incident Report of Deputy Michael Whitfield, dated 11/10/12.

[5]Exhibit D - Compilation of pursuit driving training certificates of Officers Victor Randle, Derrick Tucker, Jerry Clayton, William Jones, Michael Whitfield, Walter French, Andres Rivera, James Jones, William Mullen, David Keller.

[6]Exhibit G - Dash Cam Video of Unit 378 at 23:25:20 to 23:27:40; Exhibit H - Dash Cam Video of Captain Victor Randle.

to evade officers:

> The vehicle ran the red light at Fitzgerald's Boulevard nearly causing an accident.  The vehicle continued to travel eastbound on Casino Strip and ran the red light at Old Highway 61 and Casino Strip nearly causing another accident.  The vehicle continued to travel eastbound at a high rate of speed, and stop sticks were deployed at the intersection of Casino Strip and Old Highway 61 in order to get the vehicle stopped.  It appeared that the front right tire struck the stop sticks causing the tire to deflate, but the vehicle continued to travel eastbound on Casino Strip.  Further, the vehicle nearly caused an accident as it ran the red light at the intersection of Highway 61 and Casino Strip.  The vehicle continued to travel on Highway 304, with the front right tire rubber coming off the rim and the vehicle continuing to travel on the rim.  The vehicle then ran the red light at the intersection of Highway 304 and Kirby Road.  The vehicle turned onto Highway 3 and traveled southbound at a high rate of speed still refusing to pull over for blue lights and sirens.  The vehicle turned westbound on Hambrick Road and continued to travel at a high rate of speed.  The vehicle refused to stop at a stop sign at the intersection of Hambrick Road and Kirby Road at which time the vehicle crossed over the roadway and overturned several times in a field before it came to a final rest in Robinsonville, Mississippi.[7]

Officers were immediately on the scene along with EMS and fire department personnel. Tony Smith was thrown approximately 50 feet from the vehicle.[8]  The fire department assisted Pafford EMS with patient packaging, and Air Med 1 transported him to the Med in Memphis.[9]

The one claim remotely capable of generating an issue of contested fact is the allegation in the Complaint where Smith alleges he was beaten at the scene. **[Doc. Entry 1, ¶20 ]**.  However, Smith has made a voluntary statement recanting those allegations which is included among the

---

[7]Exhibit E - Supplemental Report by Captain Victor Randle dated 11/10/12.

[8]Exhibit I - Eleven (11) photographs of scene taken by Tunica County.

[9]Exhibit F - North Tunica Fire Department Incident Report; Exhibit K - Mississippi Crime Lab Results showing cocaine, 12/18/12.

exhibits before the Court.[10]  Moreover, the well documented scene of the single vehicle crash that

terminated the pursuit provides indisputable proof which eliminates any type of swearing match issue

here.[11]

### III.    IMPACT OF VIDEO ON SUMMARY JUDGMENT

Defendants invoke the controlling standard for consideration of summary judgment under

Rule 56, *Fed. R. Civ. Proc.*; (*See* Also: Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548,

91 L. Ed. 2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 91

L. Ed. 2d 202 (1986); Impossible Elec. Tech. v. Wackenhut Protection Systems, 669 F.2d 1026,

1031 (5th Cir. 1982); Environmental Defense Fund v. Marsh, 651 F.2d 983, 991 (5th Cir. 1981);

and, Southern Distributing Co. v. Southdown, Inc., 574 F.2d 824, 826 (5th Cir. 1978)).

An interesting thing happens to the standard summary judgment analysis when there is video

or documentary evidence present.  Although appellate courts still review evidence in the light most

favorable to the nonmoving party, the United States Supreme Court has modified the standard

analysis to assign greater weight, even at the summary judgment stage, to the facts evident from

video recordings taken at the scene.  Scott v. Harris, 550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d

686 (2007).  In Scott, the plaintiff, who was the fleeing suspect, contended that the police were

culpable by employing a maneuver to stop his speeding automobile, knowing that it would cause

serious injury to him. On the other hand, the suspect in Scott was clearly depicted on video

---

[10]Exhibit J - Video Interview by Investigator David Keller.

[11]See Exhibit I - Eleven (11) photographs of scene taken by Tunica County; See also Scott
v. Harris, 550 U.S. 372, 381, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)("A court of appeals need
not rely on the plaintiff's description of the facts where the record discredits that description but
should instead consider 'the facts in the light depicted by the videotape.'").

4

endangering innocent citizens and other officers with his reckless driving. In short, this Court need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider "the facts in the light depicted by the videotape." Id. at 381.[12]

## IV.    AUTHORITY

In virtually every case of municipal liability under §1983, "*an actor is usually interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom or rule (or lack thereof) of the municipality that permitted or caused the act or omission.*" Flores v. County of Hardeman, Texas, 124 F.3d 736, 738 (5th Cir. 1997)(emphasis added). To reach the municipality, the plaintiff must establish not only the underlying constitutional violation by its employee, but also that the employee's act resulted from a policy or custom adopted or maintained by the municipality with objective deliberate indifference to the plaintiff's constitutional rights. Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999). Beyond the threshold absence of an underlying claim, none of these factors exist in the instant case.

*(a) NO UNDERLYING CLAIM*

Unreasonable force and detention claims are governed by the Fourth Amendment of the

---

[12]See Also Foster v. Carroll County, 502 Fed. Appx. 356, 358 (5th Cir. Miss. 2012)(The prisoner argued that his excessive force claim should have proceeded to a jury because he did not have a pellet gun in his hands when the deputy shot him in the leg. A videotape of the situation was partially obstructed and did not show his hands in the moments immediately preceding and following the shooting. However, the audio and visual portions of the videotape of the incident demonstrated that the prisoner's version of the events was a visible fiction. Viewing the videotape of the deputy's actions from the perspective of a reasonable officer, the district court correctly concluded that the deputy's actions were objectively reasonable under the circumstances.).

United States Constitution.[13]  Yet, a viable Fourth Amendment claim does not exist under these facts.[14]  At the time officers engaged their blue lights, the required reasonable suspicion of particularized criminal activity clearly existed.  By any standard, a fleeing felony suspect high on drugs and driving at the speeds documented here would pose a threat to innocent bystanders and law enforcement.[15]  Mr. Smith's actions constituted probable cause for his arrest and authorized the officers to pursue his vehicle for this purpose.[16]  From there, the rule of law from Scott v. Harris, controls: ***"A police officer's attempt to terminate a dangerous high-speed car chase that threatened the lives of innocent bystanders did not violate the Fourth Amendment, even when it placed the fleeing motorist at risk of serious injury or death."***  There is no underlying claim under the United States Constitution.[17]

―――――――――――――――――

[13]Graham v. Connor, 490 U.S. 386, 396-97, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) ("Our inquiry into reasonableness is fact-specific and "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.").

[14]Carnaby v. City of Houston, 636 F.3d 183, 188 (5th Cir. Tex. 2011)(Where a decedent stated that he was a CIA agent during a traffic stop and he was shot and killed, officers were entitled to qualified immunity as to a Fourth Amendment excessive force claim because it was objectively reasonable for officers to believe that he was about to bring a firearm to bear on them; a failure-to-train claim also failed.)(Citing Scott v. Harris, 550 U.S. 372 (U.S. 2007)).

[15]Exhibit K - Mississippi Crime Lab Results showing cocaine, 12/18/12; Exhibit C - Incident Report of Deputy Michael Whitfield, 11/10/12.

[16]Fields v. City of South Houston, Tex., 922 F.2d 1183, 1189 (5th Cir. 1991) ("[W]e hold there is no cause of action for "false arrest" under section 1983 unless the arresting officer lacked probable cause.").

[17]Harris v. Serpas, 745 F.3d 767 (5th Cir. La. 2014)(Taser video evidence confirmed the district court's finding that Brian Harris was holding a knife in a stabbing position at the moment of the fatal shooting by law enforcement officers. Therefore, the district court properly concluded that the use of deadly force was not unreasonable. Since the family members did not show that there was a constitutional violation, the trial court properly dismissed the §1983 claim against the city.).

*(b) NO CUSTOM OR POLICY* ISSUE

Actual or constructive knowledge of a custom or practice attributable to the governing body, or official or the required causal connection for an official capacity claim is simply not present. Webster v. City of Houston, 735 F.2d 838, 842 (5th Cir. 1984) (*en banc*). According to the Fifth Circuit Court of Appeals, a distinction exists between the proof necessary to show a customary policy and proof of constructive knowledge of such a policy. Pineda v. City of Houston, 291 F.3d 325, 330 (5th Cir. 2002). "A pattern may exist without actual or constructive knowledge because the facts of the events are concealed from policymakers. However, the sheer numerosity of incidents can provide evidence of constructive knowledge." Id. In short, the Plaintiff must demonstrate a triable issue of improper high speed pursuits by deputies of the Tunica County Sheriff's Department. With the policy being to follow the boundaries established under Scott v. Harris, there can be no such issue.

*(c) NO CAUSATION* ISSUE

To become deliberate indifference, the policymaker must have made a conscious choice to endanger the public. Snyder v. Trepagnier, 142 F.3d 791, 799 (5th Cir. 1998)(citing City of Canton, 489 U.S. at 389). Even then, the Plaintiff must show a direct causal link between the decision by the policymaker and an injury directly caused by a violation of the United States Constitution. (*See:* Board of County Commissioners of Bryan County v. Brown, 520 US 397, 410 (1997)["[A] court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged.")]. Recognizing the need to develop policy and causation arguments in the context of police pursuit policy under Monell v. Department of Social Services, 436 U.S. 690 (1978), an entire body of "expert" publications have evolved around arguments that police pursuits are unreasonable

because a suspect will slow down and blend with other traffic if the police will just stop chasing them.[18]  Scott ended such arguments:

> Respondent intentionally placed himself and the public in danger by unlawfully engaging in reckless, high-speed flight; those who might have been harmed had Scott not forced respondent off the road were entirely innocent.  The Court concludes that it was reasonable for Scott to take the action he did.  It rejects respondent's argument that safety could have been assured if the police simply ceased their pursuit.  Id.

In a like manner, Scott rejected the notion that pursuits should be limited to felony arrests. Id.  Here, Mr. Smith chose and was responsible for his own actions, including driving at high speeds and continuing to flee even after his tires were deflated.  There is no legitimate issue of policy or causation in this case.

### (d) SUMMARY OF MUNICIPAL LIABILITY

The Plaintiffs' Complaint fails for want of an underlying violation of the United States Constitution.  Sheriff Hamp's pursuit policies are facially valid under the most recent United States Supreme Court analysis of high speed pursuits.  There are no relevant prior incidents or departmental bad habits at issue.  Finally, the notions that chasing a suspect causes them to act any differently or that police pursuits should be limited to felony arrests have been rejected as a matter of law. Summary Judgment is appropriate as to the Plaintiff's municipal claims.

### V.    QUALIFIED IMMUNITY

The doctrine of qualified immunity shields a government official from civil liability for damages based upon the performance of discretionary functions, if the official's acts did not violate clearly established constitutional or statutory law of which a reasonable person would have known.

---

[18]Alpert, G. The Most Deadly Force: Police Pursuits. Justice Quarterly 3 (M 15 (1986). Reprinted in R. Homant and D. Kennedy (eds.) Police and Law Enforcement (Volume 5) New York: AMS Press (1988).

Easter v. Powell, 467 F.3d 459, 462 (5th Cir. 2006). "Where, as here, a Section 1983 defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." Pierce v. Smith, 117 F.3d 866, 871–72 (5th Cir. 1997) (*internal quotation omitted*). To determine whether a defendant is entitled to qualified immunity, this Court engages in a two-pronged analysis, inquiring: (1) whether the plaintiff has alleged a violation of a constitutional right and, if so, (2) whether the defendant's behavior was objectively reasonable under clearly established law at the time the conduct occurred. Easter, 467 F.3d at 462. If the plaintiff fails to state a constitutional claim or if the defendant's conduct was objectively reasonable under clearly established law, then the government official is entitled to qualified immunity. Id.

The first prong requires the plaintiff to allege "the deprivation of an actual constitutional [or statutory] right." Felton v. Polles, 315 F.3d 470, 477 (5th Cir. 2002) (*internal quotation omitted*). The plaintiff may satisfy this prong by alleging "the claimed deprivation at a higher level of generality." Id. at 477–78.

For the second prong, by contrast, "the right . . . alleged to have [been] violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 478 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Previous cases need not be precisely similar to the instant case, officials can be on notice that their conduct violates clearly established law in novel factual scenarios provided that the state of the law gave them "fair warning that their [conduct] was unconstitutional." Hope v. Pelzer, 536 U.S. 730,

9

741 (2002). Even so, "[a] defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." Thompson v. Upshur County, 245 F.3d 447, 457 (5th Cir. 2001).

Under §1983, a government official can be held liable only for his own misconduct. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Beyond his own conduct, the extent of his liability as a supervisor is similar to that of a municipality that implements an unconstitutional policy. There is no evidence that Sheriff Hamp established any sort of policy during this one incident. In fact, the summary judgment evidence here demonstrates lawful action by a group of certified law enforcement officers with the sole injury being a single vehicle crash of the Plaintiff's own making. There are no defects in policy and no ancillary injuries to third parties or property. Sheriff Hamp can clearly be heard on tape actively monitoring the pursuit. Applying the more economical focus on "Step 2" approach authorized under the recent case of Pearson v. Callahan, 129 S. Ct. 808 (2008), the individual claim against Sheriff Hamp is protected by qualified immunity.

**VI.    ABSTENTION**

The Younger[19] abstention doctrine instructs federal courts to refrain from hearing constitutional challenges to state action when the exercise of federal jurisdiction would be regarded as an intrusion on the state's authority to enforce its law in its own courts. Similarly, the other abstention doctrines reinforce comity by supporting the principle that federal courts are not

---

[19]Younger v. Harris, 401 U.S. 37 (1971).

10

appropriate forums for deciding issues that are primarily of state concern. The Colorado River[20] abstention doctrine is a little different from the other abstention doctrines in that it is based on concerns of judicial efficiency. It permits federal courts to abstain from hearing cases where there is similar litigation pending in state court. Clearly, the criminal proceedings against Plaintiff Smith are ongoing at the present time in Tunica County.[21] The impact of an actual conviction on the pending indictment is obvious.[22] In the opinion of the undersigned, Younger and Colorado River appear applicable here in the alternative to summary judgment. This appears to be an appropriate case for the Court to exercise its discretion to abstain from jurisdiction.[23]

## VII. CONCLUSION

All of the documents and information discussed here has been provided to the Plaintiff together with un-presented access to the actual deputies involved. The instant motion is being filed

---

[20]Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976).

[21]Exhibit L - Tunica County Circuit Court Indictment, Cause No. 2014-0006, State of Mississippi v. Tony Smith, 2/3/14; Exhibit M - Tunica County Circuit Court Alias Capias, Cause No. 2014-0006, State of Mississippi v. Tony Smith, 2/25/14.

[22]Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994)(In order to recover damages for allegedly unconstitutional conviction or imprisonment or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of habeas corpus, 28 U.S.C. §2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983.).

[23]See Bernegger v. Haney, 2008 U.S. Dist. LEXIS 70740 (N. Dist. Miss.)(Davidson, Senior Judge)("Indeed, it would produce illogical and untoward results, if a criminal defendant or suspect were allowed to interfere with or halt criminal proceedings by preemptively filing a civil suit."); See Also: Moore v. Prentiss County, 2009 U.S. Dist. LEXIS 71631 (N. Dist. Miss. 2009)(Davidson, Senior Judge).

at present because a voluntary dismissal has not been forthcoming.  Should the Court be required to rule here, Defendants respectfully request that the Court include an award for re-payment of their attorneys' fees and costs and expenses associated with the defense of the instant civil action pursuant to Rule 11, *Fed. R. Civ. Proc.* and *42 U.S.C. §1988*.

  **RESPECTFULLY SUBMITTED** this 20th day of May, 2014.

          **GRIFFITH & GRIFFITH**

        By: /s/ ***Daniel J. Griffith***
          Daniel J. Griffith, MSB #8366
          Michael S. Carr, MSB #102138
          Attorneys for Defendants

Of Counsel:

**GRIFFITH & GRIFFITH**
123 South Court Street
P. O. Drawer 1680
Cleveland, MS 38732
Phone No. 662-843-6100
Fax No. 662-843-8153

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel J. Griffith, one of the undersigned counsel for Tunica Defendants, do hereby certify that on this day, I electronically filed the foregoing *Memorandum of Authorities* with the Clerk of the Court using the ECF system which gave notification of such filing to the all counsel of record who have appeared in this action.

> Cory Michael Williamson, Esq.
> Robert Dallas Schultze, Esq.
> WILLIAMSON SCHULTZE, PLLC
> 1403 Jackson Avenue, E.
> Oxford, MS 38655
> Phone: 662-281-9970
> Email: cory@wslawpllc.com
> Email: robert@wslawpllc.com

This the 20th day of May, 2014.

> By:  /s/ *Daniel J. Griffith*_____
>        Daniel J. Griffith, MSB #8366